UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br>　v.<br>JAZZMIN DAILEY,<br>　　　　　　　　　　　Defendant. | Case No. 2:15-cr-00226-GMN-PAL<br><br>**REPORT OF FINDINGS AND RECOMMENDATION**<br><br>(Mot Suppress – Dkt. #73) |

Before the court is Defendant Jazzmin Dailey's ("Dailey") Motion to Suppress Statements (Dkt. #73) which was referred to me for a Report of Findings of Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB1-4. The court has considered the Motion, and the government's response (Dkt. #85).

**BACKGROUND**

Dailey is charged in a two-count Indictment (Dkt. #28) returned August 5, 2015, with transportation of a minor in violation of 18 U.S.C. § 2423(a) and (e), and attempt sex trafficking in violation of 18 U.S.C. § 1591(a) and (b)(2), and § 1594(a) and (b).

The indictment arises out of an arrest on June 16, 2015, by officers of the Las Vegas Metropolitan Police Department ("LVMPD"). According to the arrest report, LVMPD Officer Twigger stopped two females in an area known for high prostitution activity. One of the women identified herself as Jazzmin Dailey. The other female initially lied about her identity and age. Eventually, she correctly identified herself and Officer Twigger confirmed she was a minor who had been reported as a missing person.

Dailey allegedly told officers she was a prostitute engaging in prostitution and she had come to Las Vegas with Raven Morris and Dailey's boyfriend Steve, later identified as Defendant Moore. The female juvenile made statements she was engaging in prostitution acts

1

1  directed by Dailey and Moore, and was in fear.  Dailey and Moore were arrested.  Dailey was
2  taken to the Clark County Detention Center where Detective Chavez and Vice Detective Van
3  Cleef conducted taped interrogations.  The first taped interrogation of Ms. Dailey was conducted
4  at 9:00 a.m.  At the start of the interrogation, Detective Chavez advised Ms. Dailey:

> This is just standard.  I just have to read you this before we talk, ok…no big deal. You have the right to remain silent.  Anything you say can be used against you in a court of law.  You have the right to the presence of an attorney.  If you cannot afford an attorney, one will be appointed to you before questioning.  Do you understand?

Dailey seeks to suppress the statement she gave to Detective Chavez arguing the *Miranda* warnings were inadequate as they failed to advise her that she had the right to consult with an attorney before questioning, or that she had the right to have an attorney present during questioning.

Dailey was interrogated a second time at 15:50 hours.  Detective Chavez advised:

> I have to read this to you again.  Ok?  Like I read it to you earlier.  You have the right to remain silent.  Anything you say can be used against you in a court of law.  You have the right to the presence of an attorney.  If you cannot afford an attorney, one will be appointed before any questioning.  Do you understand your rights?

Dailey argues that she was originally stopped and detained for jaywalking on the corner of Cameron Road into the parking lot of the Orleans Casino.  Officer Twigger clearly had verbal contact with her and a juvenile, T.B.  However, the report is silent as to the content and scope of the questions asked.  Officer Twigger's report fails to articulate reasonable suspicion that Ms. Dailey had done anything more serious than jaywalk, other than noting that Tropicana is a "known area for high prostitution activity."  The only logical conclusion is that Dailey was subjected to custodial interrogation.  It is apparent she was not free to leave when contacted by Officer Twigger for jaywalking.  However, the stop concluded with her transportation to CCDC, which is not the typical result of jaywalking.  Dailey presumes that Officer Twigger detained and questioned her beyond the scope necessary to get identification and issue a citation for jaywalking.  Therefore, her statement should be suppressed.

In addition, Dailey argues that the *Miranda* warnings that were administered were inadequate.  Dailey cites District Judge Richard F. Boulware's recent decision in *United States v.*

*Chavez*, 111 F.Supp. 3d 1131 (D. Nev. 2015), which found that the *Miranda* warnings provided by the Las Vegas Metropolitan Police Department failed to advise the defendant of the right to talk to an attorney before being questioned, and were therefore legally deficient. District Judge Jennifer A. Dorsey and Magistrate Judge Cam Ferenbach have also held that these standard warnings were inadequate. *See United States v. Loucious*, Case No. 2:15-cr-00106-JAD-CWH; *United States v. Carter*, 2:15-cr-00322-KJD-VCF. Because both sets of warnings given to Ms. Dailey by Detective Chavez were defective, the court should suppress both statements.

The government opposes the motion stating that LVMPD Patrol Officers Twigger and Endozo were patrolling on bikes in the area of Tropicana and Cameron Road near the Orleans Hotel & Casino on June 16, 2015. This is an area known for high prostitution activity. The officers observed a black female adult, later identified as Defendant Dailey, and a Hispanic juvenile female later identified as minor victim T.B., crossing at a place other than a crosswalk. Officer Twigger made visual contact with Dailey and T.B. and identified himself. Both females fled on foot. Officers quickly caught up with them and made a *Terry* stop at 4780 W. Tropicana Avenue in an outdoor uncovered parking lot based on reasonable suspicion that Dailey and T.B. had jaywalked.

The officers learned that the black female adult was Dailey based on her Arizona driver's license. Dailey told officers that she was a prostitute working on the "Tropicana track." The female juvenile identified herself as Jennifer B. and initially stated she was an adult. After being warned that lying to a law enforcement officer is a crime, the juvenile correctly identified herself. After speaking with the juvenile, Officer Twigger confirmed that she was a missing juvenile from another state. She was jaywalking in an area known for high prostitution activity in the middle of the night, wearing very revealing clothing. Officer Twigger sought the assistance of a vice detective who responded to the scene. Vice Detective Englert immediately recognized Dailey and T.B. from earlier in the evening when he had seen both of them and another woman, Raven Morris, on the "Tropicana track." Detective Englert spoke with the juvenile at the scene. The juvenile stated she had come to Las Vegas with Dailey, Raven Morris, and a man later identified as co-Defendant Moore. Raven Morris had been arrested by Vice

3

Detective Crumrine after Detective Englert had seen the three women together, and before Officers Twigger and Endozo encountered Dailey and the juvenile that night. The juvenile stated she was engaging in acts of prostitution under Dailey and Moore's direction and that she was scared. She was arrested and transported to Juvenile Hall for loitering for purposes of prostitution, giving false information to a police officer, and jaywalking. Dailey and Moore were arrested and transported to the Clark County Detention Center for jaywalking and contributing to the delinquency of a minor.

The government affirmatively represents that it does not intend to introduce Defendant Dailey's pre-*Miranda* statements in the government's case in chief. It argues that the *Miranda* warnings that were given to Dailey were constitutionally adequate and reasonably conveyed notice of a right to consult with an attorney before questioning, and the right to have an attorney present during questioning. The government argues that the motion relies on three non-binding, factually distinguishable decisions from this district, and that the *Miranda* warnings Dailey received were adequate. District Judge James C. Mahan has concluded that a virtually identical *Miranda* warning as given in *Chavez* and *Loucious* was constitutionally sufficient in *United States v. Waters*, 2:15-cr-00080-JCM-VCF, Order (Dkt. #46), 2016 WL 310738, 2016 U.S. Dist. LEXIS 8913 (D. Nev. Jan. 26, 2016). The government argues that the warnings that were administered are practically verbatim to the warnings required in the *Miranda* decision itself. The court should therefore deny the motion to suppress.

## DISCUSSION

### I.  Applicable Law

The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amendment V. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that the Fifth Amendment of the Constitution affords a citizen the right to be informed prior to custodial interrogation that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning." *Id*. at 479. The Supreme Court presumed that interrogation in certain

4

custodial circumstances is inherently coercive and held that statements made under those circumstances are inadmissible unless the suspect is specifically warned of his *Miranda* rights and freely decides to forgo those rights. *New York v. Quarles*, 467 U.S. 649, 654 (1984).

The *Miranda* decision "established certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation." *Duckworth v. Eagan*, 492 U.S. 195, 202 (1989). *Miranda* warnings are prophylactic in nature and are "not themselves rights protected by the Constitution." *Michigan v. Tucker*, 417 U.S. 433, 444 (1974). Instead, *Miranda* warnings are "measures to ensure that the right against compulsory self-incrimination [is] protected." *Id*. For this reason, courts reviewing the adequacy of warnings, "need not examine *Miranda* warnings as if construing a will or defining the terms of an easement." *Eagan*, 492 U.S. at 203. Reviewing courts should determine whether the warnings that were administered reasonably conveyed to the suspect the rights *Miranda* requires. *California v. Prysock*, 453 U.S. 355, 361 (1981). No "talismanic incantation" is required to satisfy the warnings *Miranda* requires. *Id*. at 359. Rather, the language used in the *Miranda* decision or their "fully effective equivalent" are prerequisites to the admissibility of any statement made by a suspect in custody. *Id*. at 360.

A misleading *Miranda* warning is inadequate. *Prysock*, 453 U.S. at 359. The Ninth Circuit has held that *Miranda* warnings "must be read and conveyed to all persons clearly and in a manner that is unambiguous." *San Juan-Cruz*, 314 F.3d at 389. However, "[t]o be found inadequate, an ambiguous warning must not readily permit an inference of the appropriate warning." *Doody v. Schriro*, 548 F.3d 847, 863 (9th Cir. 2008), *aff'd on remand by Doody v. Ryan*, 649 F.3d 986 (9th Cir. 2011) (en banc). A determination of the adequacy of *Miranda* warnings raises mixed questions of law and fact, which the Ninth Circuit reviews *de novo*. *Sechrist v. Ignacio*, 549 F.3d 789, 805 (9th Cir. 2008).

In *Duckworth v. Eagan*, 492 U.S. 195 (1989), the Supreme Court resolved a conflict among the lower courts concerning whether informing a suspect that an attorney would be appointed "if and when you go to court" rendered *Miranda* warnings inadequate. The Seventh Circuit found the "if and when you go to court" language suggested that only those accused who

can afford an attorney have the right to have one present before answering questions and implied that if the accused does not go to court, that is, if the government does not file charges, the accused is not entitled to counsel at all. *Id*. at 199–201. The Supreme Court rejected this view, finding that the Court of Appeals "misapprehended the effect of the inclusion of" this language. *Id*. at 203. The Supreme Court held that the "if and when you go to court" language did not render *Miranda* warnings inadequate. It reasoned that the "if and when you go to court" language accurately described the procedure under Indiana law to appoint counsel at the defendant's initial appearance and simply anticipates a suspect's question of when he will obtain counsel. *Id*. at 204. Additionally, the Supreme Court reiterated that *Miranda* did not require that attorneys be "producible on call" or suggest that every police station must have a lawyer available at all times to advise suspects. *Id*.

In *United States v. Miguel*, 952 F.2d 285 (9th Cir. 1991), the Ninth Circuit concluded that *Miranda* warnings were adequate when the officer told the suspect he "may" have an attorney appointed if he could not afford one. *Id*. at 287–88. A suspect must be informed of the right to have counsel present during questioning. *United States v. Noti*, 731 F.2d 610, 615 (9th Cir. 1984). In *United States v. Noa*, 443 F.2d 144 (9th Cir. 1971), the Ninth Circuit held that the *Miranda* warning was adequate even though it did not explicitly state that appointed counsel would be available prior to and during questioning. In *People of the Territory of Guam v. Snaer*, 758 F.2d 1341 (9th Cir. 1985), the Ninth Circuit concluded that Guam's standard advisement of rights form was adequate even though it did not expressly state that the Defendant had the right to consult with a lawyer *before* questioning or *prior* questioning.

The *Snaer* decision recognized the importance that a defendant be adequately warned of his right to consult with an attorney before questioning. *Id.* at 1343. It also recognized that although *Miranda* requires a defendant to be advised of his right to consult with counsel before questioning, the case law is ambiguous concerning how explicitly the person must be warned of that right. *Id.* 1342. To comply with the Fifth Amendment, a *Miranda* warning does not have to be explicit as long as it adequately conveys notice of the right to consult with an attorney before questioning. *Id.* at 1343.

**II.    Analysis and Decision.**

Two district judges and one magistrate judge in this district have concluded that the standard LVMPD *Miranda* warnings are constitutionally inadequate. In *Chavez*, Judge Boulware's decision noted that although the officer testified she read the defendant *Miranda* warnings from a card, she did not testify as to what was printed on the card and there was no other testimony in the record about the rights that were read to the defendant. 111 F. Supp. 3d at 1138. In *Lucious*, Judge Dorsey found that LVMPD's standard *Miranda* warning card was inadequate because it did not adequately convey the right to consult with counsel before questioning. The United States has filed a notice of appeal, and Judge Dorsey's order is before the Ninth Circuit. Judge Mahan found that *Miranda* warnings given to a defendant were constitutionally adequate when they advised him of the right to the presence of an attorney during questioning and that if the defendant could not afford an attorney one would be appointed to him before questioning. *See Waters*, Case No. 2:15-cr-00080-JCM-VCF, Order (Dkt. #46). Judge Mahan found that although the Ninth Circuit has emphasized the critical importance of the right to know that counsel may be present *during* questioning, it had upheld warnings that failed to explicitly inform defendants of the right to consult with appointed counsel *prior* to questioning. *Id*. (citing *Unites States v Noa*, 443 F 2d. 144, 146 (9th Cir. 1971)).

*Miranda* requires that a person subjected to custodial interrogation must receive four warnings prior to any questioning. These four warnings "are invariable," but the words used may be varied so long as "essential information is conveyed." *Florida v. Powell*, 559 U.S. 50, 60 (2010). First, *Miranda* requires advising a suspect that "he has the right to remain silent." 384 U.S. at 479. Here, Dailey was advised, "[y]ou have the right to remain silent." Second, *Miranda* requires a warning "that anything a suspect says can be used against him in a court of law." *Id.* Dailey was advised, "[a]nything you say can be used against you in a court of law." Third, *Miranda* requires that a suspect be warned "he has the right to the presence of an attorney." *Id.* Dailey was advised, "[y]ou have the right to the presence of an attorney." Fourth, *Miranda* requires that a suspect be warned that "if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires." *Id.* Dailey was advised, "[i]f you cannot afford an

7

1    attorney, one will be appointed before questioning." Dailey was then asked if she understood
2    these rights, and answered "yeah."

3          The Court finds that the *Miranda* warnings Dailey received complied with the four
4    warnings *Miranda* mandates. Dailey argues that advising her of the right to the *presence* of an
5    attorney during questioning does not adequately convey her right to have an attorney present
6    throughout the interrogations. However, the *Miranda* decision itself articulates the warning that
7    must be given as "the right to the *presence* of an attorney, and that if he cannot afford and
8    attorney, one will be appointed for him prior to any questioning." 384 U.S. at 479. In *Snaer*, the
9    decision relied upon by both judges Boulware and Dorsey, the Ninth Circuit found a *Miranda*
10   warning adequate which failed to advise the defendant that he had the right to consult with a
11   lawyer before questioning or prior to questioning. 758 F.2d at 1342. The warning that was
12   upheld in *Snaer* stated, "[y]ou have the right to consult with a lawyer and to have a lawyer
13   present with you while you are being questioned." *Id.* at 1343. The Ninth Circuit held that "the
14   first part of that sentence read in the context of the latter half of the sentence does adequately
15   convey notice of the right to consult with an attorney before questioning" even though it did not
16   explicitly inform him of that right. *Id.*

17         The Court finds that the *Miranda* warnings Dailey received were more explicit than the
18   one found sufficient in *Snaer*. It seems clear that a reasonable person would infer that she had
19   the right to have a lawyer present throughout questioning from the warnings Dailey received.
20   Dailey was told she had the right to the presence of an attorney. A reasonable person would
21   understand that the right to the presence of an attorney, and that one would be appointed prior to
22   questioning if she could not afford an attorney, would include the right to consult with an
23   attorney prior to questioning, and to have an attorney present throughout questioning. Moreover,
24   the *Miranda* warnings Dailey received are virtually identical to the four warnings the Supreme
25   Court mandated in *Miranda*. LVMPD's standard *Miranda* warning recites the four warnings
26   mandated by *Miranda* almost verbatim with the exception of the final three words "if he so
27   desires". The warnings Dailey received adequately conveyed what *Miranda* requires.
28   / / /

1   Finally, as the government affirmatively represents it will not seek to introduce
2   statements Dailey during her initial detention and prior to the tape recorded post *Miranda*
3   statements, the court need not address Dailey's arguments that she was subjected to custodial
4   interrogation before *Miranda* warnings were administered. However, the government will be
5   required to adhere to its representations to Dailey and the court.

   For the reasons explained,

   **IT IS RECOMMENDED** that Dailey's Motion to Suppress Statements (Dkt. #73) be **DENIED**.

   Dated this 23rd day of May, 2016.

   _____
   PEGGY A. LEEN
   UNITED STATES MAGISTRATE JUDGE